IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUINCY MUTUAL FIRE INSURANCE COMPANY,** <br>   Plaintiff, <br><br> v. <br><br> **IMPERIUM INSURANCE COMPANY,** **formerly known as "DELOS INSURANCE COMPANY,"** <br>   Defendant. | CIVIL ACTION <br><br><br> NO.  14-612 |

DuBois, J.                                                                                              April 16, 2015

## M E M O R A N D U M

### I. INTRODUCTION

This is an insurance case.  Plaintiff Quincy Mutual Fire Insurance Company ("Quincy") seeks a declaratory judgment that defendant Imperium Insurance Company ("Imperium")[1] had primary liability coverage for all claims made by Zhe Feng Huang ("Huang") against Sunrise Concrete Company ("Sunrise") in the state court action, <u>Zhe Feng Huan v. Sunrise Concrete Company, Inc., et al.</u>, No. 0600427-29-2 (Pa. Ct. Com. Pl. 2006), and breached its policy of insurance in failing to defend and indemnify Sunrise in that action.  Quincy seeks indemnification for the $1 million settlement it paid in the <u>Huang</u> litigation and reimbursement by Imperium for all defense costs incurred.  Presently before the Court are cross motions for summary judgment.  For the reasons that follow, the Court denies plaintiff's Motion for Summary Judgment, grants defendant's Motion for Summary Judgment, and enters judgment in favor of defendant and against plaintiff.

---

[1]     Sirius America issued the relevant policy, but the company subsequently changed its name to Delos Insurance Company, and then to Imperium Insurance Company.  The parties use those names interchangeably in the briefing.

## II. BACKGROUND[2]

On May 4, 2004, Zhe Feng Huang sustained injuries while working on a construction site at the Ridgelea residential housing development in Pottstown, Pennsylvania. (Pl.'s Statement of Material Facts ("Pl.'s SOMF") ¶ 2.) He subsequently filed a civil action against multiple defendants, including Sunrise, the concrete contractor at the Ridgelea site at the time of Huang's injury. (Id. ¶¶ 3, 4, 7.) Sunrise orally subcontracted with Cruzeiro Novo to perform the concrete work at the site. (Id. ¶ 7.)

At the time of Huang's accident, Cruzeiro Novo was covered by a commercial general liability policy that was issued by Imperium.[3] (Def.'s Statement of Material Facts ("Def.'s SOMF") ¶ 1.) On January 14, 2004, Imperium added to the policy a blanket additional insured endorsement, which provides, in relevant part, as follows:

> Insured includes any person or organization that you have agreed in <u>a written contract or agreement</u> to add as an additional insured on this policy, but only with respect to liability arising out of your work for such person or organization. Such person or organization ceases to be an insured under this policy when your work for that personal organization has been completed.

(Id. ¶ 2) (emphasis added). Plaintiff asserts that there was an oral agreement between Cruzeiro Novo and Sunrise to add Sunrise as an insured on the Imperium policy as a precondition to Cruzeiro Novo's work on the Ridgelea construction site. (Pl.'s Mem. Law Supp. Mot. Summ. J. 6.) Imperium denies the existence of any such oral agreement. (Def.'s Mem. Law Supp. Mot. Summ. J. 8.) Neither party asserts that any such agreement or contract was in writing.

---

[2] The Court refers to the parties' statements of material facts where those facts are not controverted. Where they are controverted, the factual disputes are noted.

[3] Imperium Policy No. C16214.

On February 20, 2004, Patrick Dever, an insurance agent employed by Fairways Insurance Services ("Fairways"),[4] issued a certificate of insurance, which states, "Sunrise Concrete Company Inc. is named as additional insured." (Def.'s SOMF ¶¶ 3, 23.) The certificate of insurance further provides that the "certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Id.

At the time that Huang sustained his injuries, Sunrise was covered by a comprehensive general liability insurance issued by Quincy.[5] (Pl.'s SOMF ¶ 1.) On January 7, 2009, at Quincy's direction, the law firm of McGivney & Kluger tendered the defense of Sunrise to Imperium via letter. (Id. ¶ 25.) Imperium denies having received the letter in January 2009, and in any event, Imperium did not agree to defend Sunrise in the Huang litigation. (Def.'s Resp. to Pl.'s SOMF ¶ 25.) Quincy defended Sunrise in that litigation and paid $1 million to settle all claims against Sunrise. (Pl.'s SOMF ¶ 26.) Quincy incurred an additional $80,693.33 in attorney's fees and costs in defending Sunrise. (Def.'s SOMF ¶ 11.)

In the Huang action, Sunrise joined Imperium as an additional defendant, alleging that Sunrise was an additional insured on the Imperium policy. (Pl.'s SOMF ¶ 29.) Sunrise filed a declaratory judgment action against Imperium in the state court, seeking a declaration that it was entitled to insurance coverage under Imperium's policy issued to Cruzeiro Novo. (Def.'s SOMF

---

[4] An Agency Agreement, dated January 1, 2001, between Fairways and Imperium was in effect at the time that Fairways issued the certificate of insurance. (Def's SOMF ¶ 21.) That Agreement provided, in part, that Fairways may "issue and deliver . . . certificates; . . . and provide all usual and customary services of an insurance agent . . . ." That Agreement also stated that Fairways does not have authority to "make representations to the insured or applicant not contained in [Imperium's] application or policy forms, or make any contract other than that contained in those forms; . . . ." (Id. ¶ 22).

[5] Quincy Policy No. CN813720.

¶ 5.)  In response, Imperium filed a motion for judgment on the pleadings, arguing, inter alia, that the lack of a contract or agreement in writing precluded Sunrise's coverage under the terms of the blanket additional insured endorsement.  (Id. ¶ 7.)  By Order dated April 23, 2012, Judge Theodore C. Fritsch, who presided over the Huang litigation in state court, denied the motion for judgment on the pleadings and, in a footnote, stated that the endorsement "is ambiguous as to whether an agreement must be in writing to add an additional insured to the insurance policy." (Id.)  On May 30, 2012, the state trial court denied Imperium's request for leave to file an interlocutory appeal, and the Superior Court subsequently denied Imperium's petition for review of the state court's refusal to certify its interlocutory order for appeal.  (Id. ¶ 8.)

Thereafter, the Huang litigation settled, and Imperium filed a motion for summary judgment against Sunrise, in which it argued that due to the Huang settlement, Sunrise no longer had standing to pursue any claims for contribution or reimbursement of the amounts paid by Quincy.  (Id. ¶ 12.)  In response, on January 29, 2014, Sunrise and Imperium entered into a Stipulation of Dismissal of all claims brought by Sunrise in the Huang action without prejudice to Quincy's right to file claims against Imperium.  (Id.)

On January 27, 2014, Quincy filed a declaratory judgment action in this Court, seeking a declaration that Imperium had primary liability coverage for all claims made by Huang against its insured, Sunrise, in the state court litigation, and breached its policy of insurance in failing to defend and indemnify Sunrise.  Quincy seeks indemnification for the $1 million settlement it paid on behalf of Sunrise in the Huang litigation and reimbursement of all defense costs incurred.

Quincy filed its Motion for Summary Judgment on December 18, 2014.  Imperium filed its Motion for Summary Judgment on January 30, 2015.

### III. LEGAL STANDARD

In considering motions for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982). After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

### IV. DISCUSSION

#### a. Language of the Blanket Additional Insured Endorsement

##### i. Interpretation of Insurance Policies

Under Pennsylvania law,[6] when the language of an insurance policy is clear and unambiguous, the court must give effect to that language. Clarke v. MMG Ins. Co., 100 A.3d

---

[6] Although the parties acknowledge that there is a threshold question as to whether the Court should apply New Jersey or Pennsylvania law, they agree that the interpretive principles governing the construction of insurance policies are largely the same under both and that the

271, 275 (Pa. Super. Ct. 2014).  However, "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement."  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).

> As explained by the Pennsylvania Supreme Court:
>
> Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (1999) (internal quotation marks and citations omitted).  Disagreement regarding interpretation does not make a contract ambiguous.  Kiewit Eastern Co., Inc. v. L & R Const. Co., Inc., 44 F.3d 1194 n.6 (3d Cir.1995) (citing Pennsylvania cases).

### ii.  Policy Language is Unambiguous

The blanket additional insured endorsement of the Imperium policy provides, in relevant part, as follows:

> Insured includes any person or organization that you have agreed in <u>a written contract or agreement</u> to add as an additional insured on this policy, but only with respect to liability arising out of your work for such person or organization.  Such person or organization ceases to be an insured under this policy when your work for that personal organization has been completed.

---

Court's application of either state law in analyzing the Imperium policy would not produce different results.  The Court agrees.  As "[t]here is no real conflict where the application of either state's law renders the same result," Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citation omitted), the Court need not conduct a deeper choice-of-laws analysis, and may refer to the states' laws interchangeably.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).  However, for the sake of consistency, the Court applies Pennsylvania law in addressing the parties' arguments with respect to the interpretation of the blanket additional insured endorsement.  See Panthera Rail Car LLC v. Kasgro Rail Corp., 985 F. Supp. 2d 677, 682 (W.D. Pa. 2013).

(Def.'s SOMF ¶ 2) (emphasis added).

First, Quincy argues that the language of the blanket additional insured endorsement is ambiguous as a matter of law because Judge Theodore C. Fritsch, who presided over the Huang litigation in the state court, previously stated that the additional insured endorsement was ambiguous, and that ruling, made after full briefing and oral argument, is entitled to "considerable deference" by this Court. Quincy concedes that Judge Fritsch's ruling does not have preclusive effect in this proceeding, as there was not a final disposition on the merits of the state court action against Imperium. The Court thus construes Quincy's argument as grounded in the "law of the case" doctrine.[7]

The Court rejects Quincy's argument because the "law of the case" doctrine is inapplicable in the present action. The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (emphasis added). "The [law of the case] doctrine only applies within the same case — an identical issue decided in a separate action does not qualify as law of the case." Farnia v. Nokia, Inc., 625 F.3d 97, 117 n. 21 (3d Cir. 2010) (citations omitted).

Quincy's action began in federal court with the filing of the Complaint. As the Order dated April 23, 2012, was issued by Judge Fritsch in the state court Huang litigation, a separate action, it is not "the law of the case." See Daramy v. Attorney Gen. of U.S., 365 F. App'x 351, 355 (3d Cir. 2010) (although removal action involved "litigation of already-disposed-of issues, albeit in new proceedings to remove the same individual," the Board of Immigration Appeals erroneously applied "law of the case doctrine" because it "does not apply to separate

---

[7] The Court notes that neither party briefed the "law of the case" issue.

actions"); Harbor Ins. Co. v. Essman, 918 F.2d 734, 738 (8th Cir. 1990) (refusing to recognize denial of motion to dismiss in a case later dismissed without prejudice as law of the case in subsequent suit between the same parties); Turner-Adeniji v. Accountants on Call, 892 F. Supp. 645, 646 (D.N.J. 1995) ("law of the case" doctrine did not bar employment discrimination action in district court following dismissal of identical state court employment discrimination action for plaintiff's failure to comply with discovery order; federal court action was entirely separate action from state court action).

Second, Quincy argues that the blanket additional insured endorsement in the Imperium policy is ambiguous on its face because it may reasonably be interpreted to require either: 1) a written contract or a written agreement, as interpreted by Imperium; or 2) a written contract or any written or oral agreement to add Sunrise as an insured.[8] Quincy relies on Imperium's use of the disjunctive "or" to connect the terms "written contract" and "agreement," and contends that its use expresses a choice between two mutually exclusive possibilities.

The Court concludes that there is only one reasonable interpretation of the Imperium blanket additional insured endorsement. Although plaintiff has asserted two "linguistically conceivable" ways in which the Court could read the phrase "written contract or agreement" in the additional insured endorsement, this does not render the terms ambiguous. Palmer v. Martinez, 42 So.3d 1147, 1154 (2010). Contractual terms are ambiguous only "if they are subject to more than one reasonable interpretation when applied to a particular set of facts."

---

[8] Plaintiff notes that the policy does not define the term "written contract or agreement." However, "when an insurance policy fails to define a term, the term is not per se ambiguous. . ." Fifth v. State Farm Ins. Co., No. 11-7440, 2014 WL 1253542, at *4 (D.N.J. Mar. 25, 2014) (citing New Jersey law); Simon Wrecking Co. v. AIU Ins. Co., 350 F. Supp. 2d 624, 636 (E.D. Pa. 2004) (noting that mere fact that term used in policy is not defined does not make it ambiguous).

Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (1999) (internal quotation marks and citations omitted) (emphasis added).

Quincy's interpretation, that the adjective "written" modifies "contract," but not agreement, is not a reasonable reading of the phrase "written contract or agreement" in the context of the blanket additional insured endorsement. "The term 'agreement,' although frequently used as synonymous with the word 'contract,' is really an expression of greater breadth of meaning and less technicality. Every contract is an agreement; but not every agreement is a contract." Black's Law Dictionary 78 (9th ed. 2009) (internal quotation marks and citation omitted). If construed as Quincy suggests, the endorsement would first require contracts adding parties as insureds to be in writing, and then immediately following that limitation, permit oral agreements adding parties as insureds. As oral agreements encompass oral contracts, see Black's Law Dictionary 78 (9th ed. 2009), the endorsement would consequently permit the very type of contract excluded by the immediately preceding terms of the endorsement. See Indemnity Insurance Company of North America v. Pacific Clay Products, Co. ("Pacific Clay"), 13 Cal. App. 3d 304, 313 (Ct. App. 1970) (stating that it would be "unreasonable and absurd" if the court were to interpret the clause "any written contract or agreement" as meaning any written contract, or written or oral agreement); U.S. Fire Ins. Co. v. Hartford Ins. Co., 312 Ill. App. 3d 153, 156 (2000) (adopting Pacific Clay reasoning); see also Michigan Mut. Ins. Co. v. Red Fox Tavern, Inc., No. 92-CA-93, 1993 WL 360722, at *2 (Ohio Ct. App. Aug. 17, 1993) (concluding that the language "written contract or agreement" is not ambiguous because "reasonable persons could not conclude that by using the conjunctive "or,"

appellant provided coverage for liability assumed by a written contract or by any agreement, whether written or oral").[9]

If the Court "find[s] but one reasonable interpretation, then a fortiori there can be no ambiguity." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 231 (3d Cir.1994). Thus, the Court concludes that that the blanket additional insured endorsement unambiguously required either a contract or an agreement in writing to add a party as an insured to the policy. As there is no dispute that there was no agreement or contract in writing to add Sunrise as an insured on the Imperium policy, the Court determines that Sunrise was not covered under the terms of the blanket additional insured endorsement.[10]

---

[9] Although plaintiff relies on two New York state court decisions in support of its position that the clause is ambiguous, the Court does not find those decisions persuasive. In Bassuk Bros. v. Utica First Ins. Co., 2002 N.Y. Misc. LEXIS 1643, 17 (2002), the trial court concluded that "the words written contract and agreement, being stated in the disjunctive, must be considered separately," and thus the term "agreement" was ambiguous. However, the court provided no additional explanation on the issue and did not discuss the reasonableness of such an interpretation.

The Superior Ice Rink, Inc. v. Nescon Contracting Corp. decision, which Quincy also cites, relied exclusively upon Travelers Indem. Co. of Am. v Royal Ins. Co. of Am. ("Travelers"), 22 A.D. 3d 252, 253 (2005), in determining that the word "written" in the phrase "written contract, agreement or permit" could reasonably be interpreted to modify only the word "contract." 52 A.D. 3d 688, 691 (2008). The Travelers court rejected defendant's argument that the word "written" unambiguously modified all the subsequent nouns and concluded that the phrase was ambiguous. That court reasoned that defendant's interpretation eliminates "any difference in meaning between the words 'contract' and 'agreement,' seemingly rendering one or the other superfluous, contrary to settled rules of construction." 22 A.D.3d at 253. This Court rejects that rationale. As previously explained, the terms "contract" and "agreement" are not actually synonymous, see Black's Law Dictionary 78 (9th ed. 2009), thus construing the adjective "written" as modifying both the words "contract" and "agreement" would not render one or the other superfluous. See Palmer, 42 So. 3d at 1153.

[10] As the Court concludes that the Imperium endorsement required a contract or agreement in writing to add Sunrise as an insured, the Court need not address the parties' arguments with respect to the existence of an oral agreement between Sunrise and Cruzeiro Novo.

### b. Certificate of Insurance Does Not Bind Imperium to Provide Coverage for Sunrise

Quincy next argues that Sunrise is entitled to coverage an as additional insured because Dever, a Fairways employee, acted as Imperium's "authorized agent" in issuing the certificate of insurance, and thus Imperium is bound to provide coverage for Sunrise.  The Court rejects Quincy's attempt to characterize Dever's issuance of the certificate of insurance as a "representation" that binds Imperium to provide coverage to Sunrise.  The plain language of the certificate states that it was issued subject to the terms of the underlying policy, which the Court concludes did not cover Sunrise as an additional insured.

The certificate of insurance provides, in relevant part, as follows:

> THIS CERTIFICATE OF INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

With respect to coverages, the certificate also states that:

> NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES . . . .

(Pl.'s Mot. for Summ. J., Ex. G, Certificate of Insurance.)

"As a general rule, where a certificate or endorsement states expressly that it is subject to the terms and conditions of the policy, the language of the policy controls."  Taylor v. Kinsella, 742 F.2d 709, 711 (2d Cir. 1984); see True Oil Co. v. Mid–Continent Cas. Co., 2006 WL 728772, *4 (10th Cir. 2006) ("Thus, because [plaintiff] was not made an additional insured under the policy, a contrary certificate of insurance does not extend coverage."); T.H.E. Ins. Co. v. City of Alton, 227 F.3d 802, 806 (7th Cir. 2000); Am. Hardware Mut. Ins. Co. v. BIM, Inc., 885 F.2d

132, 139 (4th Cir. 1989); Newport Associates Phase I Developers Ltd. P'ship v. Travelers Cas. & Sur. Co., No. A-5543-11T1, 2013 WL 10090299, at *12 (N.J. Super. Ct. App. Div. Jan. 16, 2015); Selective Ins. Co. v. Hospicomm, Inc., No. A-0485-12T1, 2014 WL 4722776, at *7 (N.J. Super. Ct. App. Div. Sept. 24, 2014).

"A certificate of insurance will grant additional insured status upon a party not named as an insured in the underlying policy only if it contains language explicitly stating intent to modify the underlying policy . . . ." Summit Bank & Trust v. Am. Modern Home Ins. Co., No. 12-02395, 2013 WL 1294273, at *2 (D. Colo. Mar. 27, 2013). No such language is contained in the certificate of insurance issued by Dever. To the contrary, the certificate clearly states that it "is issued as a matter of information," and "does not amend, extend or alter the coverage afforded by the policies." (Pl.'s Mot. for Summ. J., Ex. G, Certificate of Insurance.) Moreover, "simply labeling a hitherto unnamed party [in the policy] as an 'Insured/Borrower' [on the certificate] is not a legally sufficient expression of intent to modify the underlying policy." Summit Bank & Trust, 2013 WL 1294273, at *2; see also G.E. Tignall & Co., Inc. v. Reliance Nat. Ins. Co., 102 F.Supp.2d 300, 304 (D. Md.2000) (insurance certificate with same disclaimers prepared by insurance broker naming general contractor as additional insured under subcontractor's general liability policy was not binding on insurer). For these reasons, the Court finds that Dever's issuance of the certificate of insurance does not entitle Sunrise to additional insured status under the Imperium policy.

### c. Estoppel under the Certificate of Insurance

Finally, Quincy relies on Harr v. Allstate Insurance Company, in arguing that Imperium is equitably estopped from denying Sunrise status as an additional insured by virtue of Dever's naming Sunrise as an additional insured on the Imperium policy. 255 A.2d 208 (1969).

The Court concludes that Quincy's reliance on Harr is misplaced. In that case, the New Jersey Supreme Court held that equitable estoppel is available "under appropriate circumstances to bring within insurance coverage risks or perils which are not provided for in the policy or which are expressly excluded." Id. at 219. No such circumstances exist in this case.

"[T]he two elements required for equitable estoppel to apply are: 1) 'a misrepresentation as to the fact or extent of coverage, innocent or otherwise, by the insurer or its agent, and (2) reasonable reliance by the insured thereon to his ultimate detriment.'" Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474, 481 (D.N.J. 1995) (citing Martinez v. John Hancock Mut. Life Ins. Co., 367 A.2d 904, 911 (App. Div. 1976)). Without addressing the misrepresentation issue, the Court concludes that a reasonable jury could not find that Sunrise reasonably relied on any such misrepresentations because of the clear disclaimers contained in the certificate and the fact that they were contradicted by the unambiguous terms of the Imperium policy. See Andrea v. Metro. Life Ins. Co., No. 2:00-911, 2000 WL 35361960, at *3 (D.N.J. Aug. 14, 2000) (plaintiff "could not have reasonably relied on the [agent's] misrepresentations because they were contradicted by the clear and unambiguous terms of the Policy") (citing In re Nw. Mut. Life Ins. Co. Sales Practices Litig., 70 F. Supp. 2d 466, 488 (D.N.J. 1999)); Alabama Electric Cooperative, Inc. v. Bailey's Construction Co., Inc., 950 So.2d 280, 283–85 (Ala. 2006) (holder of certificate of insurance, claiming to be additional insured under contractor's policy could not have reasonably relied on alleged misrepresentations based on certificates of insurance because of presence of same disclaimers).

As the insured in this case is a commercial business entity, rather than a layman insured as in Harr, it is chargeable with knowledge of the contents of the policy. City Nat. Bank of New Jersey v. Selective Ins. Co. of Am., 751 A.2d 1063, 1066 (App. Div. 2000); see also 17 Lee R.

Russ & Thomas F. Segalla, Couch on Insurance § 242:33 (3d ed. 1997) ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy."); Richard H. Glucksman & Glenn T. Barger, Additional Insured Endorsements: Their Vital Importance in Construction Defect Litigation, 21 Construction Law. 30, 33 (Winter 2001) ("A developer or general contractor generally should demand more proof [than just a certificate of insurance], including a specific additional insured endorsement, to confirm their additional insured status.").

## V. CONCLUSION

For the aforementioned reasons, Imperium's Motion for Summary Judgment is granted, and Quincy's Motion for Summary Judgment is denied.

An appropriate order follows.